In re C.J. ROGERS, INC., Debtor.

William H. GRABSCHEID,
plaintiff–Appellant,

v.

MICHIGAN EMPLOYMENT SECURITY
COMMISSION, n/k/a Michigan Employ-
ment Security Agency, Defendant–Ap-
pellee.

No. 91–20388–AJS.
Adversary No. 94–3188
Civil No. 95–CV–72187–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 15, 1997.

Marc A. Goldman, Bloomfield Hills, MI, for plaintiff–appellant.

Donna K. Welch, Detroit, MI, for defendant–appellee.

## OPINION AND ORDER DISMISSING PLAINTIFF–APPELLANT'S APPEAL FOR LACK OF JURISDICTION

ROSEN, District Judge.

### I. INTRODUCTION

This appeal involves an attempt to recover allegedly preferential transfers from the Michigan Employment Security Commission, which is now known as the Michigan Employment Security Agency ("MESA"). Appellant, William H. Grabscheid, Trustee of the Estate of C.J. Rogers, Inc. (the "Debtor"), contends that these transfers totalling $216,990.38 were made pursuant to an invalid lien and that they should be avoided as preferential under 11 U.S.C. § 547(b). In response, the MESA argues that this Court may not consider the validity of the lien on appeal and that the transfers were made outside of the preference period pursuant to a perfected security interest in the form of an administrative lien and a warrant for payment. After the Court received the parties' briefs, however, the Court requested supplemental briefing regarding the MESA's Eleventh Amendment sovereign immunity.

In the proceedings below before the United States Bankruptcy Court, the MESA brought a Motion for Summary Judgment arguing that, within the preference period, the Debtor no longer had an interest in the property transferred to the MESA because, prior to the 90–day preference period, the MESA had perfected its interests in the property and the transfer at issue had already occurred. The Bankruptcy Court granted the MESA's Motion because the Court found that the MESA's administrative lien and warrant on the Debtor's property in the Michigan National Bank ("MNB") made the MESA a secured creditor who had received no more from the transfer than it would have received through distribution under the Bankruptcy Code. The Debtor appeals this judgment to this Court. Having reviewed the parties' pleadings and conducted a hearing on this matter, the Court finds that it lacks jurisdiction over this matter pursuant to the Eleventh Amendment. Therefore, the Court must dismiss this appeal.

### II. FACTUAL BACKGROUND

In order to collect outstanding taxes due on the Debtor's MESA employer account from the fourth quarter of 1988 through the fourth quarter of 1989, the MESA prepared, on December 4, 1990, a Notice to Withhold the Debtor's property that was in its bank accounts with MNB. On December 6, 1990, the MESA served this Notice on MNB pursuant to M.C.L. 421.15(b). After MNB received the Notice, MNB informed the MESA and the Debtor that it had withheld $216,990.38 from the accounts. On December 17, 1990, the MESA issued a Warrant for Payment of the funds sequestered under the Notice to Withhold. On December 19, 1990, incident to the Warrant, MNB made out a cashier's check payable to the MESA for the withheld funds. The cashier's check reached the MESA on December 27, 1990. On March 28, 1991, the Debtor filed under Chapter 11. Therefore, the 90–day preference period incident to this filing began to run on December 28, 1990. On July 15, 1991, the MESA filed a proof of claim in this matter for additional unpaid taxes and interest due under M.C.L.A. § 421.1 et seq.. Thereafter, the MESA amended its claim on several other occasions.

After filing its Bankruptcy Petition, the Debtor continued operations in Chapter 11 for about 18 months—the last six months of which were under the direction of Appellant as the Chapter 11 Trustee. On September 30, 1992, the Bankruptcy Court entered an Order converting the Debtor's case from Chapter 11 to Chapter 7 and appointed Appellant as the Chapter 7 Trustee of the Debtor's Estate.

### III. PROCEDURAL BACKGROUND

On March 22, 1994, Appellant filed a Complaint to recover the allegedly preferential transfers made to the MESA. The MESA filed a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 and Fed. R. Bankr.P. 7056 on February 9, 1995. On March 22, 1995, the Bankruptcy Court heard oral argument on the MESA's Motion. In an Opinion issued from the bench at the conclusion of the oral argument, the Bankruptcy Court granted the Motion, concluding that, pursuant to 11 U.S.C. § 547(e), the transfer was perfected on either December 6, 1990 (the date that the MESA served MNB with the Notice to Withhold) or on December 17, 1990 (the date that the MESA issued the Warrant for Payment of the funds that MNB had withheld). The Bankruptcy Court reasoned that either event constituted a basis for granting the MESA's Motion because both occurred outside the 90-day preference period.

On April 21, 1995, the Bankruptcy Court denied Appellant's Motion for Reconsideration. In this Motion, Appellant had argued that the decision granting Summary Judgment was in error because it did not address the issue of the lien's validity under M.C.L. 421.15. The Bankruptcy Court, however, found that the Motion for Reconsideration merely presented issues that the Court had already ruled upon and that an appeal was the proper vehicle for Appellant's arguments. On June 19, 1995, Appellant filed an appeal of the Bankruptcy Court's decision in this Court.

### IV. ANALYSIS

#### A. Standard of Appellate review.

The Bankruptcy Court's interpretations of the Bankruptcy Code and Michigan statutes constitute conclusions of law subject to *de novo* review on appeal. Bankr.R. 8013; *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 857 (6th Cir.1988). With respect to the Bankruptcy Court's findings of fact, the Court applies the "clearly erroneous" standard of review, Bankr.R. 8013; Fed.R.Civ.P. 52(a), so that these findings will not be disturbed "unless there is 'most cogent evidence of mistake or miscarriage of justice.'" *Newton v. Johnson (In re Edward M. Johnson and Associates, Inc.)*, 845 F.2d 1395, 1401 (6th Cir.1988) (citations omitted).

#### B. The Court's Jurisdiction over This Matter.

In an Order for Supplemental Briefing, the Court asked the parties to address whether or not the Court had jurisdiction over this matter in light of the recent Supreme Court decision in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which held that Congress only has the power to abrogate State sovereign immunity under the Fourteenth Amendment. In response, the MESA has argued that Congress cannot abrogate Michigan's sovereign immunity under the Bankruptcy Power, and therefore, that the Court should dismiss the instant appeal for lack of jurisdiction. Appellant, however, contends that Michigan has waived its sovereign immunity in this matter because on July 15, 1991 and on dates thereafter, the MESA filed proofs of claim against the instant bankruptcy estate. Because jurisdiction is a threshold issue, the Court must resolve it before turning to the merits of the appeal. *See* U.S. Const. art. III.

##### 1. The Hoffman Decision.

For the purposes of this case, the starting point for an analysis of sovereign immunity in relation to the Bankruptcy Code is the Supreme Court's decision in *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 101–02, 109 S.Ct. 2818, 2822–23, 106 L.Ed.2d 76 (1989), where the Plurality discussed 11 U.S.C. § 106, the sovereign immunity provision of the Bankruptcy

Code, at length, and where, in concurring opinions, two members of the Court foreshadowed the *Seminole Tribe of Florida, supra,* decision. At the time of *Hoffman,* § 106 read as follows:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106 (1989).

The question before the Court in *Hoffman* was whether Congress had abrogated the States' Eleventh Amendment sovereign immunity in § 106(c). The Plurality held that Congress had not because this intention was not clear in the statutory language. Thus, under § 106(c), the Court concluded that "a State that files no proof of claim in a bankruptcy would be bound, like other creditors, by a discharge of debts, including unpaid taxes, but would not be subjected to monetary recovery." *Id.* at 102, 109 S.Ct. at 2823 (citations omitted). In their concurrences, however, Justices O'Connor and Scalia stated that regardless of Congress' intent in § 106(c), Congress simply could not abrogate the States' Eleventh Amendment sovereign immunity by enacting a statute under its Bankruptcy Power. *Id.* at 105, 109 S.Ct. at 2824–25 (O'Connor, J., concurring; Scalia, J., concurring in the judgment)

## 2. *The Amendment to 11 U.S.C. § 106.*

In response to the Plurality's decision, Congress amended § 106 to provide, in relevant part, the following:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Section[ ] ... 547. ...

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is the property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106 (1996). Thus, under § 106(a), Congress has declared that for the purposes of, *inter alia,* § 547, Congress has abrogated the States' Eleventh Amendment sovereign immunity. Under § 106(b), however, Congress has determined that when a State files a proof of claim in a bankruptcy case, it will be deemed to have waived its sovereign immunity for the purposes of, *inter alia,* actions under 11 U.S.C § 547 which arise out of the same transaction or occurrence as the claim itself.

## 3. *The Seminole Tribe of Florida Decision.*

Since the *Hoffman* decision and the consequent amendment to § 106, the Supreme Court has handed down its landmark decision in *Seminole Tribe of Florida, supra,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252. In *Seminole Tribe of Florida,* the relevant question presented was: "Does the Eleventh Amendment prevent Congress from authorizing suits by Indian tribes against States for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause?" First, the Court found that in the statute at issue, the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710(d)(7), Congress had intended to abrogate the States' sovereign immunity from suit. Next, the Court turned to the question of whether Congress had, in the IGRA, abro-

gated the State's immunity from suit pursuant to a valid exercise of its power under the Indian Commerce Clause, U.S. Const. Art. 1, § 8, cl. 3. In finding that Congress lacked this abrogation power under the Indian Commerce Clause, the Court stated broadly that under no other power except the Fourteenth Amendment could Congress abrogate States' Eleventh Amendment sovereign immunity, thereby overturning the Court's plurality decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), where the Court had held that Congress could abrogate States' sovereign immunity pursuant to the Interstate Commerce Clause, U.S. Const. Art. 1, § 8, cl. 3. Indeed, the Court stated that, under Article I of the Constitution, Congress simply cannot expand the scope of the federal courts' jurisdiction under Article III because Article III "set[s] forth the exclusive catalog of permissible federal court jurisdiction." *Seminole Tribe of Florida*, — U.S. at —, 116 S.Ct. at 1128 (citations omitted).

In so holding, the Court noted that, aside from *Union Gas, supra*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1, this result was consistent with all of its prior precedent, including that related to Congress' Article I Bankruptcy Power:

> [I]t has not been widely thought that the federal antitrust, bankruptcy or copyright statutes abrogated the States' sovereign immunity. This Court has never awarded relief against a State under any of those statutory schemes ... Although the copyright and bankruptcy laws have existed practically since our nation's inception ... there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States.

*Id.* at — n. 16, 116 S.Ct. at 1132 n. 16. Indeed, the Court observed that:

> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment *prevents congressional authorization of suits by private parties against unconsenting states.*

*Id.* at —, 116 S.Ct. at 1131. Nevertheless, the Court noted that its decision presumed

sovereign immunity, which the Court recognized a State could still waive by consenting to the suit at issue. *Seminole Tribe of Florida*, — U.S. at —, 116 S.Ct. at 1122.

**4. *Section 106(b) of the Bankruptcy Code Is An Unconstitutional Abrogation of the States' Eleventh Amendment Sovereign Immunity.***

In the instant matter, pursuant to 11 U.S.C. § 106(b), Appellant is attempting, in a federal court, to recover from the MESA, a governmental unit of the State of Michigan, an allegedly preferential involuntary tax payment. Thus, because the *Seminole Tribe of Florida* decision prohibits Congress from using any Article I power to abrogate the States' Eleventh Amendment sovereign immunity, the Court must determine whether Congress engaged in this prohibited practice when it enacted § 106(b).

■ To determine if Congress has abrogated the States' Eleventh Amendment sovereign immunity, courts examine two questions: (1) "[W]hether Congress has 'unequivocally expressed its intent to abrogate the immunity;'" and (2) "[W]hether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida, supra*, — U.S. at —, 116 S.Ct. at 1123 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)).

**a. *Congressional Intent.***

■ The test for determining whether Congress "unequivocally expressed its intent" to abrogate the States' Eleventh Amendment immunity from suit in federal court is the plain language of the statute itself or its "'overwhelming implication [which] leave[s] no room for any other reasonable construction.'" *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 239, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (citations omitted).

Section 106 provides that:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to

the extent set forth in this section with respect to the following:

(1) Sections ... 547 ...

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is the property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106 (1996).

■ In section (a), Congress abrogates the sovereign immunity of the States to the extent delineated in subsections (1)—(5). Then, in section (b), Congress waives the sovereign immunity of the States to the extent that a claim in the bankruptcy proceedings against a State involves the same transaction or occurrence that is the subject of a proof of claim that the State filed. Thus, by the strict language of § 106(b) alone, Congress has not, *per se*, abrogated the States' Eleventh Amendment immunity, but rather, has set the conditions pursuant to which States will be deemed to have waived their immunity. Here, Congress has tried to distinguish section (b) from section (a) by limiting abrogation to the circumstances of (a)(1)—(5) and by couching section (b) in terms of waiver.

■ The distinction that Congress has attempted to draw, however, must fail because the intent to abrogate in section (a) and the intent to "conditionally abrogate" in section (b) are in substance and function the same. First, only the States themselves may waive their own sovereign immunity, regardless of whether Congress has the power of abrogation. *See Atascadero State Hospital, supra,* 473 U.S. at 241–42, 105 S.Ct. at 3147; *Employees of Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare,* 411 U.S. 279, 296, 93 S.Ct. 1614, 1623–24, 36 L.Ed.2d 251 (1973) (Marshall, J., concurring) (waiver of a State's Eleventh Amendment sovereign immunity is a matter of voluntary choice). Second, and as a consequence of the first, when Congress dictates the circumstances of waiver to the States, it becomes the "functional equivalent" of abrogation because in either case Congress is determining when States will be amenable to suit. *AER–Aerotron, Inc. v. Texas Dep't of Transportation,* 104 F.3d 677, 681 (4th Cir. 1997) ("[T]he power to define waiver can become the functional equivalent of the power to abrogate"). Thus, Congress' intent to abrogate sovereign immunity in section (a) is no different than its intent to "conditionally abrogate" or to waive sovereign immunity in section (b) since both sections make Congress, and neither the States nor the courts, the final arbiter of State sovereign immunity. Indeed, the statutory language and structure themselves indicate that the intent to abrogate from § 106(a)—which is even plainer on its face—must be imported into § 106(b). In this Court's view, the separation of the abrogation language in subsection (a) from the waiver language in subsection (b) is simply a

subterfuge to circumvent the "no abrogation" doctrine and thereby, do indirectly what Congress may not now, in light of *Seminole Tribe of Florida* and as foreshadowed in *Hoffman,* do directly.

The Court's analysis here is directly supported by a recent decision from the Fourth Circuit. In *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140, 1147–48 (4th Cir.1997), Roger Schlossberg, a trustee in bankruptcy, sued the State of Maryland Comptroller of the Treasury in federal court to avoid as a preference the bankruptcy debtor's payment of income taxes made to the state within 90 days of the filing of the bankruptcy petition. The Fourth Circuit dismissed the trustee's action for lack of jurisdiction and analyzed § 106(b) in the following manner:

> Because 11 U.S.C. § 106(a) purports to abrogate state immunity also for § 106(b), our analysis [regarding the intent to abrogate] likewise applies to § 106(b). But even the language of 11 U.S.C. § 106(b) itself—that a state is "deemed to have waived sovereign immunity"—amounts to language of abrogation.

*In re Creative Goldsmiths, supra,* 119 F.3d at 1147. *See also, In re NVR L.P.,* 206 B.R. 831 (Bankr.E.D.Va.1997) ("[I]nsofar as Congress undertook in revised … § 106(b) … to displace or to modify the meaning ascribed to the Eleventh Amendment by the courts, its endeavor must be deemed an attempted abrogation of the states' constitutional immunity").

Put simply, whether Congress says "abrogate" or "deem to be waived" it clearly intends abrogation because either phrase has the same substantive and practical effect, namely Congress alone is determining when States will be subject to suit. Accordingly, the Court finds that Congress has expressed a clear intent to abrogate state sovereign immunity in § 106(b).

Before proceeding, the Court observes that its determination regarding Congress' intent to abrogate in § 106(b) is not undercut by the *Hoffman* decision, *supra.* In *Hoffman,* the Supreme Court found that Congress had not clearly expressed its intent to abrogate in former § 106(c), relying in part on its conclusion that former § 106(c) did not authorize monetary recovery against the States. Incident to this conclusion, the Supreme Court compared § 106(c) with §§ 106(a) and (b), stating that:

> the narrow scope of the waivers of sovereign immunity in §§ 106(a) and (b) makes it unlikely that Congress adopted in § 106(c) the broad abrogation of Eleventh Amendment immunity for which petitioner argues [—i.e., monetary recovery]. The language of § 106(a) carefully limits the waiver of sovereign immunity under that provision, requiring that the claim against the governmental unit arise out of the same transaction or occurrence as the governmental unit's claim. Subsection (b) likewise provides for a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit's allowed claim.

*Hoffman, supra,* 492 U.S. at 102, 109 S.Ct. at 2823. Thus, the *Hoffman* comparison of former §§ 106(a) and (b) to former § 106(c) was about their relative breadth, not about their relative function, i.e., waiver equalling or not equalling abrogation.

### b. *Pursuant to a Valid Power.*

■ Having found that Congress has in § 106(b) expressed an intent to abrogate, the Court must inquire whether Congress has abrogated pursuant to a valid power. Congress enacted Section 106(b) in the Bankruptcy Reform Act of 1994, Pub.L.No. 103–394, § 113. Both the Bankruptcy Reform Act and § 106 itself are silent as to what power Congress was using when it passed these provisions. However, under *Seminole Tribe of Florida, supra,* Congress may only abrogate the States' Eleventh Amendment sovereign immunity when it is acting pursuant to the Fourteenth Amendment. Thus, to determine its constitutionality, the Court must consider whether Congress enacted § 106(b) under its Fourteenth Amendment powers.

In relevant part, the Fourteenth Amendment provides that:

> Section 1. All persons born or naturalized in the United States, and subject to the

jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

\* \* \*

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV, §§ 1 and 5.

The United States Supreme Court has stated that Congress need not "recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection'" when it enacts laws pursuant to this power. *E.E.O.C. v. Wyoming*, 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983); *See also, Wilson–Jones v. Caviness*, 99 F.3d 203, 208 (6th Cir.1996). However, due to the implications for State sovereignty, courts "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981). Such caution is necessary because otherwise " § 5 becomes a license to Congress to pass any sort of legislation whatsoever." *Wilson–Jones, supra*, 99 F.3d at 209.

The Sixth Circuit has recently distilled these principles into the following test: "[I]f Congress does not explicitly identify the source of its power as the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims ... [i.e., eradicating] ... discrimination by state actors on the basis of race or gender." *Wilson–Jones*, 99 F.3d at 210. In the absence of this nexus, therefore, a court should conclude that the statute at issue was not enacted pursuant to Congress' powers under the Fourteenth Amendment. *Id.*

Neither the Bankruptcy Reform Act of 1994, including § 106, nor any other bankruptcy legislation of which the Court is aware, is logically connected to or reasonably related to any recognized Fourteenth Amendment aim.[1] Indeed, it would not be much of a leap in logic to assume that prior to *Seminole Tribe of Florida* Congress enacted every piece of bankruptcy legislation pursuant to its Article I bankruptcy power. Moreover, it is quite clear that when the Supreme Court examined former § 106 in *Hoffman, supra*, at least 5 of the Justices, the 2 who concurred and the 3 who dissented, concluded quite naturally that Congress was using its bankruptcy power in § 106.[2] 492 U.S. at 105, 109 S.Ct. at 2824–25 (O'Connor, J., concurring; Scalia, J., concurring in judgment), 2825–28, 492 U.S. at 106–13 (Marshall, J., Brennan, J., Blackmun, J., Stevens, J.). The Court is not cognizant of any reason to think otherwise with respect to the amended § 106. *See In re Creative Goldsmiths, supra*, 119 F.3d at 1146–47 ("[T]here

---

1. In *Wilson–Jones, supra*, a case holding, *inter alia*, that the Fair Labor Standards Act ("FLSA") could not be regarded as a statute enacted under the Fourteenth Amendment, the Court did not discuss the Privileges and Immunities Clause of Article I of the Fourteenth Amendment. This is likely because several Supreme Court decisions, most notably the *Slaughter–House Cases*, 83 U.S. 36, 79, 16 Wall. 36, 21 L.Ed. 394 (1873) (Privileges and Immunities Clause only protects uniquely federal rights), have left the Privileges and Immunities Clause "essentially moribund." *Lutz v. City of York, Pa.*, 899 F.2d 255, 264 (3d Cir.1990). This conclusion is particularly warranted in this matter because "[t]here is no constitutional right to obtain a discharge of one's debts in bankruptcy." *United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973).

2. As the Fourth Circuit recently observed,

Indeed, the conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800—68 years before the passage of the Fourteenth Amendment. We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law.

*In re Creative Goldsmiths, supra*, 119 F.3d at 1146.

is no evidence to indicate that in enacting the Bankruptcy Reform Act of 1994, Congress acted under § 5 of the Fourteenth Amendment ... If the Fourteenth Amendment is held to apply so broadly as to justify Congress' enactment of the Bankruptcy Code as a requirement of due process, then the same argument would justify every federal enforcement scheme as a requirement of due process under the Fourteenth Amendment"). Therefore, the Court finds that Congress did not enact 11 U.S.C. § 106(b) pursuant to its powers under the Fourteenth Amendment, and therefore, under *Seminole Tribe of Florida*, the Court must declare § 106(b) unconstitutional because any other power of Congress would be invalid in these circumstances.[3] Simply put, the Eleventh Amendment and the Supreme Court's decision in *Seminole Tribe of Florida* demand that this Court recognize that under any Article I power Congress can neither abrogate, nor deem to be waived, the States' sovereign immunity. *See In re Creative Goldsmiths, supra,*, 119 F.3d at 1147–48; *In re NVR L.P., supra,* 206 B.R. 831, 838–39.[4]

### 5. *The MESA Has Not Waived Its Sovereign Immunity.*

Having found that § 106(b) is unconstitutional, the Court must now determine if the MESA has nevertheless waived its Eleventh Amendment sovereign immunity by consenting to this suit, independently of § 106(b). *See Parden v. Terminal Railway of Ala. State Docks Dept.*, 377 U.S. 184, 186, 84 S.Ct. 1207, 1210, 12 L.Ed.2d 233 (1964) (cited with approval in *Seminole Tribe of Florida*, ⸺ U.S. at ⸺, 116 S.Ct. at 1128). A State waives its immunity and consents to suit in federal court: (1) by specific declaration or by act, such as filing a general appearance, or by the State becoming a plaintiff or an intervenor in the federal lawsuit. *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1882). Here, it is undisputed that the State of Michigan has not by declaration or by legislation waived its sovereign immunity to suits in federal court. *See Van Antwerp v. State*, 334 Mich. 593, 601, 55 N.W.2d 108 (1952); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986). Moreover, the MESA has not filed a general appearance in federal court, even though it has defended the preference action against it in the Bankruptcy Court and in this Court. *See Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974).

---

**3.** Having found § 106(b) unconstitutional, it is evident *a fortiori* that § 106(a) is also unconstitutional. *See, e.g., In re Creative Goldsmiths, supra,* 119 F.3d at 1146–47. Section 106(a) plainly abrogates the State's Eleventh Amendment sovereign immunity and, like § 106(b), was not enacted pursuant to the Fourteenth Amendment. *Id.*

**4.** Moreover, even if § 106(b) were enacted pursuant to the Fourteenth Amendment it may still suffer from constitutional infirmity—namely that Congress cannot determine for itself what constitutes or does not constitute a waiver of a State's sovereign immunity. The Fourth Circuit noted this in the following passage from *In re Creative Goldsmiths, Inc., supra:*

> In [§ 106], Congress unequivocally purports to say when states have no immunity from private suits in federal court. While 11 U.S.C. § 106(b) may correctly describe those actions that, as a matter of constitutional law, constitute a state's waiver of the Eleventh Amendment, it is nevertheless not within Congress' power to abrogate such immunity by "deeming" a waiver. Rather, in the absence of a constitutional authorization, it lies solely within a state's sovereign power to waive its immu-

nity voluntarily and to consent to federal jurisdiction. Only if it waives such immunity may a private citizen sue the state in federal court. 119 F.3d at 1147.

The Fourth Circuit's analysis finds resonance in the Supreme Court's recent decision in *City of Boerne v. P.F. Flores, Archbishop of San Antonio*, ⸺ U.S. ⸺, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), which overturned the Religious Freedom and Restoration Act of 1993 ("RFRA"), 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.*. Here, the Court stated that Congress lacks "the power to determine what constitutes a constitutional violation" or "to decree the substance of the Fourteenth Amendment's restrictions on the State" because the Fourteenth Amendment power is merely remedial and limited to enforcing the Amendment itself. *City of Boerne*, ⸺ U.S. at ⸺, 117 S.Ct. at 2164. By analogy, therefore, even under the Fourteenth Amendment, Congress lacks the ability to determine the substance and scope of the Eleventh Amendment because this determination is inherently a matter of constitutional interpretation which is the province of the courts, not the legislature. *See also, Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is").

Nevertheless, Appellant insists that the MESA has consented to this suit and waived its Eleventh Amendment sovereign immunity because the MESA filed proofs of claim in the bankruptcy proceedings for the Debtor's additional unpaid taxes and interest. The MESA, however, contends that it has not consented to this suit because its proofs of claim cannot be considered consent to the instant preference action, which amounts to, essentially, an unrelated "offensive" counterclaim.

■ The controlling precedent on the waiver of sovereign immunity in bankruptcy proceedings is *Gardner v. State of New Jersey*, 329 U.S. 565, 571, 67 S.Ct. 467, 470, 91 L.Ed. 504 (1947), particularly because the other reported decisions on this issue focus on either § 106, which the Court has held unconstitutional, or on other provisions of the Bankruptcy Code which have been superseded. In *Gardner*, the State of New Jersey filed a claim for unpaid taxes against the debtor. Faced with objections to the claim by other creditors, the State contended that a determination of the amount or priority of its claim would constitute an impermissible suit against it as a sovereign. In finding that the priority and amount of the State's tax lien was within the jurisdiction of the Bankruptcy Court, the Supreme Court observed that:

> [i]t is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. If the claimant is a State, the procedure of proof and allowance is *not transmitted into a suit against the State* because the court entertains objections to the claim. *The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res.* It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash. When the State becomes the actor and files a claim against

the fund it waives any immunity which it otherwise might have had respecting the adjudication of *the claim*.

*Gardner, supra*, 329 U.S. at 573–74, 67 S.Ct. at 472 (*emphasis* added). Under the plain language of *Gardner*, it seems that, in the absence of § 106, when a State files a proof of claim in a bankruptcy proceeding, the State only waives its sovereign immunity with respect to the adjudication of that particular claim, otherwise the adjudication of the State's claim would be "transmitted into a suit against the State" for monetary damages which would violate the principle that "[n]o judgment is sought against the State."

The Court's reading of *Gardner* is also supported by the weight of authority from the courts that have interpreted *Gardner* and/or the Eleventh Amendment without reference to § 106 or superseded and/or unconstitutional Bankruptcy Code provisions. *In re Friendship Medical Center, Ltd.*, 710 F.2d 1297, 1300 (7th Cir.1983); *New York O. & W. Ry. Co. v. People of State of New York*, 158 F.2d 769, 770–71 (2d Cir.1947); *The State of Alaska v. O/S Lynn Kendall*, 310 F.Supp. 433, 435 (D.Alaska 1970); *In re NVR L.P.*, 206 B.R. 831 (Bankr.E.D.Va.1997); *See also, In re Department of Energy Stripper Well Exemption Litigation*, 956 F.2d 282, 285 (Em.App.1992) (appeals court established to review district court cases under the Economic Stabilization Act) ("Federal courts have provided a tough standard for finding an implied waiver of Eleventh Amendment immunity ... Federal courts have jurisdiction over a counterclaim brought against a state only if the counterclaim arises from the same event underlying the state's cause of action, and only if the claimant asserts his or her claim defensively by way of recoupment to defeat or diminish the state's recovery"); *Woelffer v. Happy States of America, Inc.*, 626 F.Supp. 499, 502 (N.D.Ill.1985) ("[F]ederal courts have consistently held that a state plaintiff does not waive its sovereign immunity with respect to all plausible counterclaims. To be cognizable, a counterclaim must 1) arise from the same event underlying the state's action and 2) be asserted 'defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery,

but not for the purpose of obtaining an affirmative judgment against the State' ").

The Sixth Circuit's decision in *In re Rebel Coal Company, Inc.*, 944 F.2d 320 (6th Cir. 1991) (hereinafter *"Rebel Coal"*), is also instructive here, even though it is couched in terms of the former § 106. In *Rebel Coal*, the United States obtained a judgment against the debtor for $21,526, which represented a small part of the civil fines that the United States claimed the debtor owed for violations of the Mine Safety and Health Act. Pursuant to the judgment, the United States garnished $17,500 from the debtor shortly before it declared bankruptcy. Thereafter, the debtor sought to recover the garnished funds as a preferential transfer. The United States filed a proof of claim in the bankruptcy case in the amount of $314,712.58 for unpaid civil penalties, including the uncollected portion of the judgment on which the garnishment was based.

Under former § 106(c), the Sixth Circuit held that the debtor could not maintain the action against the United States because the United States had not waived its sovereign immunity to that extent. Specifically, the Court found that the debtor's preference claim and the United States' claim for the funds owed were not sufficiently related for the purposes of establishing a compulsory counterclaim under Fed.R.Civ.P. 13(a), the standard which courts had been applying under former § 106. *Rebel Coal*, 944 F.2d at 322. Here, the Court reasoned that the claims raised different issues of fact and law since litigation of the preference claim looked only at the issue of preferential payment, while the civil penalties would require analysis of the Mine Safety and Health Act and the debtor's allegedly violative conduct. *Id.* (citing *Maddox v. Kentucky Fin. Co., Inc.*, 736 F.2d 380, 382 (6th Cir.1984)). Setting aside the "taint" of the former § 106(c), the Court finds that the Sixth Circuit's approach demonstrates the exceptional deference that federal courts should give to sovereign immunity claims and the narrowness with which federal courts should view any alleged waivers of sovereign immunity. Moreover, it is highly analogous to the instant matter because the transfer to the MESA satisfied in part the overall tax obligation which is the basis for the MESA's proofs of claim.

In its pleadings, however, Appellant urges the Court to find that the Supreme Court's decisions in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1991) and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 36, 109 S.Ct. 2782, 2787, 106 L.Ed.2d 26 (1989), suggest that the Supreme Court has broadened the circumstances under which it will find that States have waived their sovereign immunity. The Court finds Appellant's argument unpersuasive because it finds no parallel between these cases, which deal with the waiver of the Seventh Amendment right to a jury trial, and the subject at issue here, a State's waiver of its Eleventh Amendment sovereign immunity.

In *Granfinanciera, S.A., supra*, the Supreme Court held that a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when the trustee sues him or her in bankruptcy to recover a fraudulent conveyance. 492 U.S. at 36, 109 S.Ct. at 2787. In dicta, the Court stated that if the person had filed a claim, the Court would reach a different result because then the person would be deemed to have triggered the "allowance and disallowance of claims" which is triable in equity. *Id.* at 58.

In *Langenkamp, supra*, the Supreme Court held that creditors who filed claims against a debtor's bankruptcy estate had waived their Seventh Amendment right to trial by jury when they were in turn sued by the bankruptcy trustee to recover allegedly preferential transfers. Specifically, the Court found that when the creditors filed their proofs of claim, they had subjected themselves to the Bankruptcy Court's equitable power:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power ... If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity ... In other words,

the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction ... As such, there is no Seventh Amendment right to a jury trial. If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial ...

*Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. at 331.

These decisions are simply not relevant to this Court's inquiry here. The Supreme Court's focus in these decisions was merely which Bankruptcy jurisdiction a person consents to when he or she files a claim—equity or law—and then the consequences of that jurisdiction—jury or no jury. The threshold question of jurisdiction itself was not before the Court in either of these cases. This question, however, was precisely the one that the Court answered in *Gardner, supra.* Therefore, the Court finds no reason to deviate from the plain language of *Gardner* itself.

Relying on *Gardner,* the Court finds that the MESA has not consented to this preference action because the resolution of the preference action is not part of adjudicating the proofs of claim that the MESA filed. *See also, Rebel Coal, supra,* 944 F.2d at 322–23 (preference action to recover payment of civil fines does not raise same questions of fact or law as proof of claim for additional fines). A different result would transform the MESA's proofs of claim into a lawsuit against the MESA which seeks a monetary judgment from the State treasury over and above the resolution of the proofs of claim. The Eleventh Amendment and this Nation's bedrock principles of comity and federalism plainly

prohibit this.[5] Accordingly, the Court must dismiss this appeal for lack of jurisdiction because the MESA is immune from this suit under the Eleventh Amendment.[6]

## V. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that this appeal is DISMISSED for lack of jurisdiction.

---

**5.** The Court is aware that this result contravenes many of the policy imperatives of federal bankruptcy law. However, the Court notes that the Eleventh Amendment simply trumps these policy concerns because under the Constitution States are co-equal sovereigns and it is within this framework that Congress must enact bankruptcy laws, not vice-versa.

**6.** As a result, the Court does not reach the question of whether the Debtor's involuntary payment to the MESA is a preferential transfer under 11 U.S.C. § 547.