In re Ruth Pearl SCARBOROUGH, Debtor.

Ruth Pearl Scarborough, Plaintiff,

v.

State of Michigan Collection Division, and United Student Aid Funds, Inc., Defendants.

In re Sharon E. Rushton, f/k/a Sharon E. Cox, Debtor.

Sharon E. Rushton, Plaintiff,

v.

Michigan Department of Education and/or Michigan Guaranty Agency, Defendants.

In re Ashli J. Kirtley, Debtor.

Ashli J. Kirtley, Plaintiff,

v.

Michigan Guaranty Agency, Defendant.

Bankruptcy Nos. SM 97–90830, SM 98–90115, SM 97–90801.
Adversary Nos. 98–99008, 98–99010. 98–99020.

United States Bankruptcy Court, W.D. Michigan.

Jan. 25, 1999.

---

**CONSOLIDATED OPINION DECIDING ISSUE OF SOVEREIGN IMMUNITY AND GRANTING STATE'S MOTIONS TO DISMISS**

JO ANN C. STEVENSON, Bankruptcy Judge.

Before the Court are three motions involving the dischargeability of various student loans issued by the Michigan Department of Education and/or the Michigan Guarantee Agency. The Plaintiffs, Scarborough, Rushton and Kirtley, each filed a Complaint to Determine the Dischargeability of Student Loan Debt under 11 U.S.C. § 523(a)(8) on

February 11, 1998, February 13, 1998 and April 7, 1998, respectively. Although a separate Motion to Dismiss was filed in each adversary proceeding, the Court has taken the three motions under advisement in order to issue a consolidated opinion. Each of these cases raises the identical question: to wit, whether Congress has validly abrogated the State's sovereign immunity when enacting the Bankruptcy Code.

Because this opinion is based solely on legal issues, the specific facts of each case are irrelevant. Suffice it to say that each Plaintiff incurred student loan debt owed to a state agency and subsequently filed Chapter 7.

## HISTORY OF THE ELEVENTH AMENDMENT

Article III, Section 2 of the United States Constitution provides that federal judicial power extends to controversies "between a State and Citizens of another State." Relying on this language, the Supreme Court of the United States assumed original jurisdiction over a suit brought in 1793 by a citizen of South Carolina against the State of Georgia. *Chisholm v. Georgia*, 2 U.S. 419, 2 Dall. 419, 1 L.Ed. 440 (1793). The decision "created such a shock of surprise that the Eleventh Amendment was at once proposed and adopted." *Principality of Monaco v. State of Mississippi*, 292 U.S. 313, 325, 54 S.Ct. 745, 749, 78 L.Ed. 1282 (1934).

The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Through the years, the Supreme Court continued to expand the Amendment's reach from disallowing lawsuits against one of the States by a citizen of another state, to include suits brought by a citizen against his own State. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The Supreme Court has also held that a sovereign's immunity may be waived and a State may consent to suit in federal court. However, the State's consent must be unequivocally expressed. *Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883), *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

That a state may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given: not one brought by citizens of another state, or by citizens or subjects of a foreign state, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the amendment is but an exemplification.

*In re State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921).

In 1989, the Supreme Court decided that Congress had the authority to abrogate the States' Eleventh Amendment immunity, pursuant to the Constitution's Article I Commerce Clause powers. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 17, 109 S.Ct. 2273, 2283, 105 L.Ed.2d 1 (1989).

Like the Fourteenth Amendment, the Commerce Clause with one hand gives power to Congress while, with the other, it takes power away from the States. It cannot be relevant that the Fourteenth Amendment accomplishes this exchange in two steps, while the Commerce Clause does it in one. The important point, rather, is that the provision both expands federal power and contracts state power; that is the meaning, in fact, of a 'plenary' grant of authority, and the lower courts have rightly concluded that it makes no sense to conceive of Section 5 as somehow being an 'ultraplenary' grant of authority.

*Union Gas*, 491 U.S. at 17, 109 S.Ct. 2273

Six years later, the Supreme Court decided *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) effectively overruling *Union Gas*. The

Court stated that in order to determine whether Congress has abrogated the states' sovereign immunity, it must ask two questions: first whether Congress has "unequivocally express[ed] its intent to abrogate the immunity," and second, whether Congress has acted "pursuant to a valid exercise of power."

> In overruling *Union Gas* today, we reconfirm that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area ... that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole*, 517 U.S. at 72–73, 116 S.Ct. 1114.

In footnote 16, the Supreme Court recognized the bankruptcy implications of the *Seminole* decision:

> [I]t has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes;
>
> \*     \*     \*     \*     \*     \*
>
> Although the copyright and bankruptcy laws have existed practically since our nation's inception, and the antitrust laws have been in force for over a century, there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States.

*Id.* at 73, 116 S.Ct. 1114.

## DISCUSSION

### I. Is the Michigan Guarantee Agency a State Entity?

■ The Michigan Guarantee Agency (MGA) is a nonprofit corporation created by

1960 Mich. Pub. Act 77; M.C.L. § 390.951; M.S.A. § 15.2097(1), and is a division of the Michigan Higher Education Student Loan Authority (MHESLA), which is housed within the Michigan Department of Treasury. The MGA administers five loan programs which guarantee subsidized Federal Stafford Loans, unsubsidized Federal Stafford Consolidated Loans made by banks, credit unions, savings and loan associations, insurance companies, federal agencies and by the MHESLA's Michigan Direct Student Loan Program.

The MHESLA is subject to the supervision and examination of the Commissioner of the Financial Institutions Bureau of the Department of Commerce. It is also required to make annual reports to the governor and the legislature. Consequently, we find that the MGA is a State entity that would be afforded Eleventh Amendment protection.

### II. Has the Michigan Guarantee Agency Waived its Sovereign Immunity?

■ We also find that the MGA has not waived its sovereign immunity by consenting to suit in this Court because it has not filed a proof of claim or in any other way "unequivocally expressed a waiver." "A state defendant does not waive its Eleventh Amendment immunity by filing a motion to dismiss ... by failing to raise the Eleventh Amendment before the trial court, or by seeking judgment in its favor." *In re Kish*, 212 B.R. 808, 814 (D.N.J.1997). A State waives its immunity and consents to suit in federal court by specific declaration or by act, such as filing general appearance, or by becoming plaintiff or intervenor in a federal lawsuit.[1] *In re C.J. Rogers, Inc.*, 212 B.R. 265 (E.D.Mich. 1997).

### III. Has Congress Unequivocally Expressed Its Intent to Abrogate the State's Sovereign Immunity?

11 U.S.C. § 106(a) as amended by the Bankruptcy Reform Act of 1994, states in pertinent part:

---

**1.** No blanket waiver of sovereign immunity is contained in Michigan's Constitution.

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections ... 523 ... of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

The Legislative History of 11 U.S.C. § 106 states:

This amendment expressly provides for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief. It is the Committee's intent to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 waiving the sovereign immunity of the States and the Federal Government in this regard ... As suggested by the Supreme Court, section 106(a)(1) specifically lists those sections of title 11 with respect to which sovereign immunity is abrogated.

Based on this amendment, we find that Congress has unequivocally expressed its intent to abrogate the State's sovereign immunity in a Section 523(a)(8) adversary proceeding.

## IV. Has Congress Acted "Pursuant to a Valid Exercise of Power?"

■ Because the bankruptcy courts do not exercise their judicial power under Article III some have argued that the Eleventh Amendment is not implicated. As stated in *In re Sacred Heart Hospital of Norristown*, 133 F.3d 237, 243 (3rd Cir.1998), "this argument cannot withstand the Supreme Court's recent pronouncement in *Seminole Tribe* that 'the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.'" 517 U.S. at 72–73, 116 S.Ct. at 1131–32.

■ We further agree with *In re Grewe*, 4 F.3d 299, 304 (4th Cir.1993) where the Fourth Circuit concluded; "while functionally there may appear to be a separate bankruptcy court, for jurisdictional purposes there is only one court, i.e., the district court." Because the bankruptcy court is a unit of the district court for jurisdictional purposes, and the district court was created under Article III of the Constitution, we find that the Eleventh Amendment clearly restricts judicial power under Article III and therefore applies to the bankruptcy court.

A majority of federal courts have determined that *Seminole* leaves the Fourteenth Amendment as the sole avenue for Congress to validly abrogate a State's immunity. The question now becomes, was the Bankruptcy Code enacted pursuant to the Fourteenth Amendment or Congress' Article I bankruptcy powers? In *In re Creative Goldsmiths of Washington D.C., Inc.*, 119 F.3d 1140, 1146–47 (4th Cir.1997) the court stated:

[T]he conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1800—68 years before the passage of the Fourteenth Amendment. We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific substantive Article I power clearly enabled the law.

In *In re NVR, L.P.*, 206 B.R. 831, 840 (Bankr.E.D.Va.1997) the court stated: "if Congress does not explicitly identify the source of its power under the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims ..." The Honorable Douglas O. Tice, Jr., opined that he was unable to discern some legislative purpose or factual predicate that supports ... an exercise of the power granted Congress by Section 5 of the Fourteenth Amendment ... In contrast, the Bankruptcy Clause often has been cited as the "authority by which Congress enacted some revision to the bankruptcy law."

A majority of federal courts have also determined that Congress enacted the Bankruptcy Code pursuant to its Article I Bank-

ruptcy Powers and not the Fourteenth Amendment. Consequently they have concluded that Congress' attempt to abrogate the state's sovereign immunity in the Bankruptcy Code is invalid. *In re Sacred Heart Hospital of Norristown,* 133 F.3d 237, 244 (3rd Cir.1998) (While Congress need not recite words "section 5" or "Fourteenth Amendment" or "equal protection" when enacting laws pursuant to its power to enforce provisions of Fourteenth Amendment, if Congress does not explicitly identify source of its power as Fourteenth Amendment, there must be something about the Act connecting it to recognized Fourteenth Amendment aims.) *In the Matter of the Estate of Fernandez,* 123 F.3d 241 (5th Cir.1997) (Congress did not have authority to abrogate, under Bankruptcy Code, state sovereign immunity pursuant to Fourteenth Amendment, given the lack of evidence that the Bankruptcy Reform Act of 1994 was enacted pursuant to Fourteenth Amendment, or that the Act was enacted to remedy any incipient breaches or even general violation of rights specified in the Fourteenth Amendment.); *In re NVR, L.P.,* 206 B.R. 831 (Bankr.E.D.Va. 1997) (Because Fourteenth Amendment based legislation imposes congressional policy on state involuntarily, and because it often intrudes on traditional state authority, courts should not quickly attribute to Congress unstated intent to act under its authority to enforce Fourteenth Amendment.); *In re York—Hannover Developments, Inc.,* 201 B.R. 137 (Bankr.E.D.N.C.1996); *In re Tri-City Turf Club, Inc.,* 203 B.R. 617 (Bankr. E.D.Ky.1996) (Because Congress' abrogation of states' sovereign immunity in the Bankruptcy Code was not authorized under the Fourteenth Amendment, bankruptcy court lacked jurisdiction over Chapter 11 debtor's adversary proceeding.); *In re Midland Mechanical Contractors, Inc.,* 200 B.R. 453 (Bankr.N.D.Ga.1996); *In re Burke,* 200 B.R. 282 (Bankr.S.D.Ga...1996); *In re Martinez,* 196 B.R. 225 (D.P.R.1996); *In re Kish,* 212 B.R. 808 (D.N.J.1997) (Bankruptcy does not constitute 'privilege or immunity' under Fourteenth Amendment.); *In re Mueller,* 211 B.R. 737 (Bankr.D.Mont.1997) (Congress did not enact Bankruptcy Code provision purporting to abrogate sovereign immunity

as to certain bankruptcy issues under Privileges and Immunities Clause of the Fourteenth Amendment, as required to constitutionally abrogate sovereign immunity.); *In re C.J. Rogers, Inc.,* 212 B.R. 265 (E.D.Mich. 1997) (Bankruptcy Code section deeming state to have waived its sovereign immunity to extent that claim against state involved same transaction that was subject of state's proof of claim was unconstitutional as Congress did not enact statute pursuant to its powers under Fourteenth Amendment.); *In re Creative Goldsmiths of Washington D.C., Inc.,* 119 F.3d 1140 (4th Cir.1997) (Congress lacked power to use Bankruptcy Clause to circumvent Eleventh Amendment's restriction on federal jurisdiction, and provision could not be sustained under Fourteenth Amendment's enforcement clause, given lack of evidence that Congress passed Bankruptcy Code under that clause or sought to preserve core values specifically enumerated in Amendment.); *In re Koehler,* 204 B.R. 210 (Bankr.D.Minn.1997) (Congress, under Fourteenth Amendment, has power to abrogate state's Eleventh Amendment immunity by making its intention to do so unmistakably clear in language of statute.); *In re Mitchell,* 222 B.R. 877 (9th Cir. BAP 1998).

Other courts have determined that Congress enacted the Bankruptcy Code pursuant to the Fourteenth Amendment and not its Article I bankruptcy powers. *In re Straight,* 209 B.R. 540 (D.Wy.1997) (While Congress lacked authority to abrogate states' Eleventh Amendment immunity in exercise of bankruptcy powers granted to it under Article I, Congress had authority, pursuant to the Fourteenth Amendment, to abrogate states' sovereign immunity from suit by individuals for violating provisions of the Bankruptcy Code.); *In re Headrick,* 203 B.R. 805 (Bankr. S.D.Ga.1996) (Fourteenth Amendment granted Congress the authority to subject state of Georgia to complaints filed by individuals to enforce automatic stay and to recover damages for violation thereof, regardless of whether Congress specifically stated that it was enacting Bankruptcy Code pursuant to Fourteenth Amendment.); *In re Burke,* 203 B.R. 493 (Bankr.S.D.Ga.1996) (Through Bankruptcy Code's waiver of sovereign immunity, Congress unequivocally expressed its

intent to abrogate Georgia's immunity from suit by individuals for state's violation of the discharge injunction, and that abrogation was enacted by valid exercise of power under the Fourteenth Amendment.); *In re Headrick,* 200 B.R. 963 (Bankr.S.D.Ga.1996) (Congress' abrogation of states' Eleventh Amendment sovereign immunity under Bankruptcy Code was enacted by valid exercise of power under Fourteenth Amendment.); *In re Southern Star Foods, Inc.,* 190 B.R. 419 (Bankr. E.D.Okla.1995) ("Although such [bankruptcy] laws are enacted 'pursuant to Article I' they are enforceable 'through the Fourteenth Amendment.' ")

## CONCLUSION

We find that Congress has not acted pursuant to a valid exercise of power. We agree with the majority of those cases stating that the Bankruptcy Code was enacted pursuant to Congress' Article I bankruptcy powers and not the Fourteenth Amendment. There is no specified violation of rights that the Fourteenth Amendment could remedy nor any identifiable act connecting the Bankruptcy Code to recognized Fourteenth Amendment goals. The Bankruptcy Clause is unquestionably the most often cited authority by which Congress continuously revises bankruptcy law.

This is not to say that these Plaintiffs are precluded from seeking to have their student loan debts discharged pursuant to 11 U.S.C. § 523(a)(8). It only means that the bankruptcy court does not have jurisdiction to make that determination. The proper forum to continue these lawsuits would be the Michigan Court of Claims in Lansing, Michigan.

For the reasons stated herein,

NOW THEREFORE, IT IS HEREBY ORDERED that the Bankruptcy Court for the Western District of Michigan lacks jurisdiction to hear Adversary Cases numbered 98–99008; 98–99010; and 98–99020;

IT IS FURTHER ORDERED that the Michigan Department of Education and/or the Michigan Guarantee Agency's Motions to Dismiss are GRANTED.

IT IS FURTHER ORDERED that a copy of this opinion shall be served by first-class United States mail upon Ruth Pearl Scarborough, Sharon E. Rushton f/k/a Sharon E. Cox, Ashli J. Kirtley, John B. Burcham, Esq., Donald W. Bays, Esq., Timothy C. Quinnell, Esq., and Steven B. Flancher, Esq., with an information only copy to be served upon Chapter 7 Trustee, Darrell Dettmann.