**In re Gary BURKE, Pamela B. Burke, Debtors.**

**Gary BURKE, Pamela B. Burke, Plaintiffs,**

**v.**

**STATE OF GEORGIA, Acting Through Its Agency, The Department of Revenue, Defendant.**

Bankruptcy No. 92–11482. Adversary No. 95–01050A.

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Dec. 16, 1996.

Angela C. McElroy, Augusta, GA, for Plaintiffs.

Shereen M. Walls, Assistant Attorney General, Atlanta, GA, for Defendant.

### ORDER

JOHN S. DALIS, Chief Judge.

Gary and Pamela Burke (hereinafter "Debtors") filed their complaint against the State of Georgia acting through its agency the Department of Revenue (hereinafter "Georgia") alleging a violation of the discharge injunction of 11 U.S.C. § 524(a).[1] Georgia filed this motion to alter or amend this court's order denying Georgia's motion to dismiss for lack of jurisdiction. *Burke v. Georgia (In re Burke)*, 200 B.R. 282 (Bankr. S.D.Ga.1996). The motion is denied. The facts necessary to resolve this motion are set forth in the order.

The Debtors filed a Chapter 13 case on August 14, 1992. On December 1, 1992, Georgia filed a proof of claim for state income taxes, including a secured claim of $856.21 for the tax year 1990, an unsecured priority claim of $12,437.40 for taxes and interest for the tax years 1980 through 1984, and a general unsecured claim of $1,810.50 for tax penalties incurred from 1980 through 1984. The Debtors objected to the priority status asserted in the $12,437.40 claim. By order dated May 18, 1993 following a contested hearing, I sustained the objection and allowed the $12,437.46 claim as general unsecured. The Debtors converted their case to Chapter 7 on July 20, 1993, and received a discharge on February 1, 1994. Neither Georgia nor the Debtors filed an action to determine the dischargeability of these taxes under 11 U.S.C. § 523[2] prior to the case closing on February 9, 1994.

On May 3, 1994, Georgia sent a letter to the Debtors demanding payment of the 1990

---

1. 11 U.S.C. § 524(a) provides:

   a) A discharge in a case under this title—
   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived.
   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
   (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is ex-

   cepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

2. 11 U.S.C. § 523(a)(1) provides:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   (1) for a tax or a customs duty—
   (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
   (B) with respect to which a return, if required—

taxes and the taxes for the years 1980–1984. On January 27, 1995, the Debtors moved to reopen their Chapter 7 case. Thereafter, the Debtors instituted this action against Georgia alleging that the demand letter violated the § 524(a) discharge injunction. Georgia filed a motion for summary judgment, alleging that the taxes were not discharged, and that it therefore did not violate the injunction. On August 9, 1995, I entered an order finding that the 1990 taxes were not discharged, but that the 1980–1984 taxes including accrued interest and penalties were discharged by the February 1, 1994 order. Following my denial of Georgia's subsequent motion to dismiss the complaint for lack of jurisdiction, Georgia moves to alter or amend that order.

Georgia asserts that the waiver of immunity provision of 11 U.S.C. § 106 [3] is unconstitutional under the Supreme Court's decision in *Seminole Tribe v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and that it is therefore immune from suit in this court under the Eleventh Amendment to the United States Constitution.[4] In my previous order, I declined to find § 106 unconstitu-

tional for two reasons: 1) this court lacks Article III authority to declare an act of Congress unconstitutional; and 2) Georgia's filing a Proof of Claim against the Debtors waived its immunity from suit in this court, rendering analysis of § 106 moot. *Burke v. Georgia (In re Burke)*, 200 B.R. 282 (Bankr. S.D.Ga.1996). Subsequent to publishing this opinion, I decided *Headrick v. Georgia (In re Headrick)*, 200 B.R. 963 (Bankr.S.D.Ga. 1996), a case dealing with Georgia's claimed immunity from suit for violating the § 362 automatic stay. This order incorporates my reasoning in *Headrick,* and upholds the judgment that Georgia is not immune from suit for violations of the discharge injunction.

## I. THE FOURTEENTH AMENDMENT GRANTS CONGRESS AUTHORITY TO WAIVE GEORGIA'S ELEVENTH AMENDMENT IMMUNITY FROM SUIT BY INDIVIDUALS FOR GEORGIA'S VIOLATION OF THE DISCHARGE INJUNCTION.

■ By its express terms, the Eleventh Amendment to the United States Constitu-

---

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

3. 11 U.S.C. § 106 provides: Waiver or sovereign immunity. (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, *524*, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for a costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with

the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate. (emphasis added)

4. U.S. Const. Amend. 11 provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

tion immunizes a State from suit in federal court by a non-resident of that State. Despite this narrow language, the Supreme Court has consistently interpreted the Eleventh Amendment to immunize States from suits by any individual, whether a resident of that State or of another State. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This immunity restricts Congress' ability to create rights of action against States in federal court under Congress' Article I powers unless the State consents to suit. *Seminole Tribe v. Florida*, — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Congress cannot abrogate a State's immunity from suit by creating a right of action against the State under the Indian Commerce Clause.)

The Supreme Court established a two prong test to determine whether Congress may abrogate a State's immunity: "... first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." (citations omitted) *Seminole Tribe* at —, 116 S.Ct. at 1123. In *Seminole Tribe*, the Supreme Court acknowledged that Congress had unequivocally acted to abrogate State immunity from suit under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq., but ruled that the Indian Commerce Clause of the Constitution (U.S. Const., Art. I, § 8, cl. 3 [5]) did not authorize Congress to abrogate this immunity. In determining that the Indian Commerce Clause did not authorize Congress to subject a State to suit in federal court by an individual, the Court reversed the line of cases holding that the Commerce Clause authorizes Congress to act so. *See*

*e.g., Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

Bankruptcy Code title 11 § 106 unequivocally expresses Congressional intent to abrogate the States' sovereign immunity by subjecting them to damage awards for violations of the automatic stay. *See, In Re Merchants Grain, Inc.*, 59 F.3d 630 (7th Cir. 1995) *vacated and remanded sub nom., Ohio v. Mahern*, — U.S. —, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996) (Congress' 1994 revision of § 106 unequivocally evidenced its intent to abrogate the States' immunity from suit). The question is whether Congress has authority to abrogate this immunity under the Bankruptcy Clause of the United States Constitution (U.S. Const.Art. I, § 8, Cl. 4 [6]). Answered yes by the Seventh Circuit in *Merchants Grain*, but remanded by the Supreme Court for reconsideration in light of *Seminole Tribe*. — U.S. at —, 116 S.Ct. at 1411.

Under the rationale articulated in *Seminole Tribe*, Congress is not authorized to abrogate the States' immunity under the Bankruptcy Clause of the United States Constitution. — U.S. at —, n. 16, 116 S.Ct. at 1131, n. 16; *Id.* at —, 116 S.Ct. at 1134 (Stevens' dissent). However, in *Seminole Tribe* the Supreme Court recognized and reaffirmed Congress' ability to abrogate a State's immunity under the express language of the Fourteenth Amendment [7]. — U.S. at —, 116 S.Ct. at 1125. The Supreme Court did not address whether the Fourteenth Amendment authorized Congress to enforce the Indian Gaming Regulatory Act against the States because the petitioner abandoned this issue after the Eleventh Circuit Court of Appeals rejected its argument that the Indi-

---

**5.** U.S. Const. Art. I § 8, cl. 3 provides that Congress shall have the power: To regulate commerce with foreign nations, and among the several States and with the Indian tribes.

**6.** U.S. Const. Art. I Sec. 8, Cl. 4 provides that Congress shall have the power:

[4.] To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States.

**7.** U.S. Const.Amend. 14 provides in pertinent part:

Section 1. Citizens of the United States.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws....

Section 5. Power to enforce amendment.

The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

an Gaming Regulations Act created a liberty and property interest subject to Congress' protection under the Fourteenth Amendment. *Id.* at ——, 116 S.Ct. at 1125.

The Fourteenth Amendment expressly gives Congress the authority to pass laws to prevent the States from abridging citizens' privileges and immunities. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

"The protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, *under the laws and Constitution of the United States,* are incident to citizenship of the United States, but does not include rights pertaining to state citizenship and derived solely from the relationship of the citizen and his state established by state law." (emphasis added, citations omitted).

*Snowden v. Hughes,* 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944). Article I empowers Congress to create a uniform bankruptcy code, which bankruptcy code provides certain protections to debtors which are privileges and immunities of federal citizenship. The Fourteenth Amendment extends to Congress the right to enforce those privileges and immunities by creating private rights of action against the States. In § 106, Congress unequivocally expressed its intent to abrogate Georgia's immunity, and this abrogation was enacted by a valid exercise of power under the Fourteenth Amendment. *See, Mather v. Oklahoma Employment Sec. Comm'n (In re Southern Star Foods, Inc.),* 190 B.R. 419 (Bankr.E.D.Okl.1995). (Article I gives Congress the power to enact uniform laws of bankruptcy, and the Fourteenth Amendment authorizes Congress to create federal rights of action against the States to enforce the provisions of the Bankruptcy Code in federal court notwithstanding the States' Eleventh Amendment immunity.); *Headrick v. Georgia (In re Headrick),* 200 B.R. 963 (Bankr.S.D.Ga.1996), *citing, Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (The Fourteenth Amendment specifically authorizes Congress to abrogate the States' Eleventh Amendment immunity.)

## II. EVEN IF GEORGIA IS IMMUNE FROM SUIT FOR ITS ALLEGED VIOLATIONS OF THE DISCHARGE INJUNCTION, IT HAS WAIVED THAT IMMUNITY BY FILING A PROOF OF CLAIM AGAINST THE DEBTORS.

Georgia's filing a proof of claim in this case waived its sovereign immunity with regard to this court's adjudication of its tax claim against the Debtors. *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1946) *reh'g denied,* 330 U.S. 853, 67 S.Ct. 768, 91 L.Ed. 1296 (1947). However, Georgia asserts that this holding would effectively allow a debtor to assert any claim the debtor holds against a State, notwithstanding the fact that the claims may have no logical connection with the filed claim. It is not necessary that I explore the outer limits of Georgia's immunity waiver. The instant action does not involve a claim by the Debtor unrelated to the claim adjudication process, e.g. a breach of contract or tort claim. *Compare, Ellenberg v. Board of Regents (In re Midland Mechanical Contractors, Inc.),* 200 B.R. 453 (Bankr.N.D.Ga.1996).

After submitting its tax claim to the jurisdiction of this court, Georgia allegedly attempted to collect the taxes in willful contravention of the discharge injunction to which Georgia had, at least, subjected itself by participating in the bankruptcy process. By submitting itself to this court's claim adjudication process, Georgia admittedly subjected itself to the court's authority to determine the amount of the claim, the priority of payment of the claim from assets of the Chapter 7 estate, and the dischargeability of all or part of the claim asserted. This submission necessarily extends not only to the determination of these issues, but also to the enforcement of that determination, lest the determination be rendered meaningless. Bankruptcy courts maintain the equitable jurisdiction to achieve the orderly and expeditious disposition of bankruptcy cases without interference by parties within its jurisdiction, whether by statute or by consent. *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), rehearing denied, 498 U.S. 1043, 111 S.Ct. 721, 112

L.Ed.2d 709 (1990), *citing Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (Both cases dealt with a creditor's right to jury trial under the Seventh Amendment to the United States Constitution.) The rationale used in *Granfinanciera* and *Langenkamp* applies equally here.

In *Granfinanciera* [the Supreme Court] recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S. at 58–59, and n. 14, 109 S.Ct. at 2799–2800, and n. 14 (citing [*Katchen v. Landy,* 382 U.S. 323 at 336, 86 S.Ct. 467 at 476 15 L.Ed.2d 391 (1966) ] ).

If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equitable jurisdiction. Granfinanciera, supra,* 492 U.S. at 57–58, 109 S.Ct. at 2798–2799.

*Langenkamp supra* 498 U.S., at 44, 111 S.Ct. at 331. In this case Georgia has voluntarily subjected itself to this court's equitable power, including enforcement of the discharge injunction which precludes collecting discharged debts.

It is therefore ORDERED that Georgia's motion to alter or amend is DENIED.