**In re Russell David KING, Jeannie Marie Davis, Debtors.**

**Russell David King, Jeannie Marie Davis, Plaintiffs,**

v.

**State of Florida, Department of Revenue, Defendant.**

**Bankruptcy No. 99–50503–JDW. Adversary No. 01–5003–JDW.**

United States Bankruptcy Court, S.D. Georgia, Waycross Division.

May 15, 2002.

Franklin D. Hayes, Douglas, GA, for Plaintiffs.

Frederick F. Rudzik, Tallahassee, FL, for Defendant.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Debtors' complaint for turnover and contempt. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(E). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtors Russell King and Jeannie Davis filed a Chapter 13 petition on May 25, 1999. Neither Schedule E (unsecured priority claims) nor Schedule F (general unsecured claims) listed a debt for child support. However, during plan confirmation, a Waycross, Georgia, child support recovery agency was allowed a claim for $9,300, which was listed in the trustee's confirmation report as a special unsecured claim. King believed the agency was assisting the State of Florida in recovering benefits the state had paid on behalf of King's children. The plan was confirmed on October 27, 1999.

In an effort to recover money owed to it and pursuant to federal law, Florida intercepted King's $3,923 federal tax refund postconfirmation, keeping $2,073 and returning the balance to King. Florida had not, and still has not, filed a claim in the case and was unaware of the bankruptcy at the time it diverted the money. Upon receiving notice of the bankruptcy, Florida refused to return the money. Neither party has indicated when Florida received notice of the bankruptcy.

Debtors filed this adversary proceeding seeking turnover of the funds and contempt. This Court held a hearing on May 24, 2001, and found that Florida violated the automatic stay by refusing to return the money after it learned of the bankruptcy. The Court also concluded that, contrary to Florida's assertions, the state was not shielded by sovereign immunity because the case was not a "suit" within the meaning of the Eleventh Amendment. On June 21, 2001, the Court ordered Florida to turn over the $2,073 it had retained from King's tax refund and to pay $450 in attorney fees and $500 in punitive damages.

Florida appealed to the District Court for the Southern District of Georgia, which held that this proceeding falls within the scope of the Eleventh Amendment and reversed and remanded this Court's ruling for further consideration in light of its decision.[1] In particular, the district court instructed this Court to consider whether Florida's sovereign immunity was abrogated by Congress.

### Conclusions of Law

#### *Applicability of Sovereign Immunity*

The Court previously limited its rationale to the principle that a case is not a suit within the meaning of the Eleventh Amendment if it does not seek a depletion of the state treasury. The Court provided this abbreviated rationale in the belief that

---

**1.** The district court declined, for the time being, to consider two other issues raised on appeal by Florida: (1) whether this Court erred in finding that the bankruptcy plan provided for Florida, and (2) whether 11 U.S.C. § 106(a)(3) prohibits this Court from assessing punitive damages against Florida.

it would control the outcome, and a more expansive inquiry into the nature of sovereign immunity would be unnecessary. However, because the district court has rejected that rationale, the Court states its more fundamental reason for believing that state sovereign immunity does not apply in bankruptcy to ensure that the district court's consideration of this Court's rationale is fully informed.

■ State sovereign immunity is embodied in the Eleventh Amendment, which states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. However, the Supreme Court has said that " 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms.' " *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991)). By way of further explanation, the Court said that state sovereign immunity

> neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden v. Maine,* 527 U.S. 706, 713, 119 S.Ct. 2240, 2246–47, 144 L.Ed.2d 636 (1999).

■ The Bankruptcy Code modifies the positions of interested parties, creating rights and remedies unavailable outside bankruptcy. *See, e.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 206, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983) ("As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens."); *Bliemeister v. Industrial Comm'n of Ariz. (In re Bliemeister),* 251 B.R. 383, 389 (Bankr.D.Ariz.2000) ("The bankruptcy clause entails an ability to impair the obligations of contracts, a power which was expressly denied to the States ...."); 130 Cong. Rec. H1110 (daily ed. March 20, 1984) (statement of Rep. Kastenmeier), *reprinted in* 1 Collier on Bankruptcy ¶ 3.02[2] (15th ed. rev.2001) ("the very purpose of bankruptcy is to modify the rights of the debtors and creditors"). The Code creates entities that exist only within the scope of bankruptcy, such as the trustee and debtor in possession. These entities cannot be said to be citizens of a state. Yet, often, they are the only ones empowered to raise certain claims in bankruptcy—claims that could not be asserted outside bankruptcy. Turnover proceedings and dischargeability proceedings, for example, do not exist outside of bankruptcy. When the Court previously observed that the case before it did not constitute a suit within the meaning of the Eleventh Amendment, it meant that this is not a proceeding that could be brought against a state outside of bankruptcy. All bankruptcy claims, as the claim in this case, owe their creation to bankruptcy laws passed by Congress. Furthermore, "[a]ctions in bankruptcy are not simply individual suits against a state. Instead they are part of a collective process." Leonard H. Gerson, *A Bankruptcy Exception to Eleventh Amendment Immunity: Limiting the*

*Seminole Tribe Doctrine,* 74 Am. Bankr. L.J. 1, 4 (2000).

The Supreme Court has said that it "reject[s] any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States." *Alden,* 527 U.S. at 732, 119 S.Ct. at 2255. However, the Supreme Court frequently has recognized the unique nature of bankruptcy, and many of its bankruptcy opinions are consistent with the conclusion that states cannot escape the authority of the bankruptcy court.[2] Furthermore, there is ample evidence that the framers of the Constitution intended to divest the states of their sovereignty with respect to bankruptcy.

Most courts, including the United States Supreme Court, have begun their analysis of sovereign immunity in bankruptcy with the assumption that it applies in bankruptcy. *See, e.g., Hoffman v. Connecticut Dep't of Income Maint.,* 492 U.S. 96, 104, 109 S.Ct. 2818, 2824, 106 L.Ed.2d 76 (1989)

(analyzing a previous attempt by Congress to abrogate state sovereign immunity in bankruptcy without first considering whether the attempt was necessary). That assumption had never been challenged until recently. *See Bliemeister,* 251 B.R. at 386–87. Beginning with *Bliemeister,* a line of cases has developed to demonstrate that when the Constitution was adopted, the states agreed to forego sovereign immunity with respect to bankruptcy laws passed by Congress. *See Hood v. Tennessee Student Assistance Corp. (In re Hood),* 262 B.R. 412 (6th Cir. BAP 2001); *H.J. Wilson Co., Inc. v. Commissioner of Revenue (In re Service Merch. Co., Inc.),* 262 B.R. 738 (Bankr. M.D.Tenn.2001), *rev'd,* 265 B.R. 917 (M.D.Tenn.2001); *Nelson v. La Crosse County Dist. Attorney (In re Nelson),* 254 B.R. 436 (Bankr.W.D.Wis.2000), *rev'd sub nom,* 258 B.R. 374 (W.D.Wis.2001), *appeal docketed,* No. 1261 (7th Cir. Feb. 2, 2001); *Bliemeister,* 251 B.R. 383.[3]

**2.** See *Hood v. Tennessee Student Assistance Corp. (In re Hood),* 262 B.R. 412, 419–23 (6th Cir. BAP 2001) and Gerson, 74 Am. Bankr. L.J. at 4–7, for a thorough discussion of these cases.

**3.** In *Nelson,* the district court's entire analysis of the states' surrender of sovereign immunity in bankruptcy consisted of a lengthy quotation from *Seminole Tribe* in which the Supreme Court said that state sovereign immunity " 'is not so ephemeral as to dissipate when the subject of the suit is an area ... that is under the exclusive control of the Federal Government.' " 258 B.R. at 376 (quoting *Seminole Tribe,* 517 U.S. at 72, 116 S.Ct. at 1131). The court provided no further discussion, nor did it consider the Supreme Court's statement in that same opinion that the plan of convention could have divested the states of their sovereign immunity. *Seminole Tribe,* 517 U.S. at 68, 70 n. 13, 116 S.Ct. at 1129, 1131 n. 13. Therefore, the district court's analysis in reversing the bankruptcy court was incomplete and unpersuasive. *Nelson* was appealed to the Seventh Circuit Court of

Appeals and currently is under advisement by that court.

In *Service Merchandise,* the court rested its reversal on a footnote in *Seminole Tribe* in which the Supreme Court stated that

"it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes; ... Although the copyright and bankruptcy laws have existed practically since our Nation's inception, ... there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States."

265 B.R. at 920–21 (quoting *Seminole Tribe,* 517 U.S. at 72 n. 16, 116 S.Ct. at 1131–32, n. 16). Again, the court's analysis is incomplete. It relies on dicta for which the Supreme Court offered no support, and which has been questioned as to its accuracy. *See supra* note 2. Instead the court gives a long string cite of cases in which "courts found either that the State did not waive its sovereign immunity or

At the time of the drafting of the Constitution, the states were heavily involved in private debt collection, most notably by imprisoning the debtors. *Hood,* 262 B.R. at 416 (citing Charles Jordan Tabb, *The History of the Bankruptcy Laws in the United States,* 3 Am. Bankr. Inst. L.Rev. 5, 12 (1995)). They also passed legislation to discharge debtors. *Id.* (quoting *Bliemeister,* 251 B.R. at 390–91). However, such a discharge would not necessarily protect a debtor who entered a different state. *Id.* at 416 (citing Charles Warren, *Bankruptcy in United States History,* 67–68 (1935)). In conjunction with Alexander Hamilton's discussion of sovereign immunity in *The Federalist,*[4] this "historical context ... compels the conclusion that the plan of the Convention necessarily included the States' [sic] surrendering their sovereignty over bankruptcy." *Id.* at 417.

Hamilton stated that inherent in sovereignty is the notion that a state cannot be sued without its consent. *The Federalist* No. 81, at 414 (Alexander Hamilton) (Bantam Classic ed., 1982). "Unless ... there is a surrender of this immunity in the plan of convention, it will remain with the states...." *Id.* In an earlier article, Hamilton had explained that under the Constitution, "the State Governments would clearly retain all the rights of sovereignty which they before had and which were not by that act, *exclusively* delegated to the United States." *Id.* No. 32, at 152. Such

a delegation could only occur in one of three ways:

> where the Constitution in express terms granted an exclusive authority to the Union; where it granted in one instance an authority to the Union and in another prohibited the States from exercising the like authority; and where it granted an authority to the Union, to which a similar authority in the States would be absolutely and totally *contradictory* and *repugnant.*

*Id.* By way of example, Hamilton said the alienation of state sovereignty could "be found in that clause, which declares that Congress shall have power 'to establish an UNIFORM RULE of naturalization throughout the United States.' This must necessarily be exclusive; because if each State had power to prescribe a DISTINCT RULE there could be no UNIFORM RULE." *Id.* at 153. Like naturalization, the bankruptcy clause requires uniformity.[5] Hence, Hamilton's reasoning with respect to naturalization can be applied with equal force to bankruptcy. To conclude differently would, as the court in *Hood* pointed out, result in an undermining of the bankruptcy process.

> [S]ubordinating bankruptcy laws to the sovereignty of the States would permit the States to use their power and sovereignty to collect any debt, including both public and *private* claims. It would thus permit the States to ignore the bank-

---

that Congress did not effectively abrogate that immunity. Such findings impliedly assume that such sovereign immunity exists." 265 B.R. at 921. However, reasoning such as the district court's merely reinforces the point this Court made *supra* that courts have been acting on assumption rather than analysis when it comes to state sovereign immunity in bankruptcy.

**4.** The Supreme Court has repeatedly referred to *The Federalist* as evidence of the framer's understanding of the Constitution when ana-

lyzing the nature of state sovereign immunity. *See, e.g., Alden,* 527 U.S. at 714–15, 119 S.Ct. at 2247; *Seminole Tribe,* 517 U.S. at 70 n. 13, 116 S.Ct. at 1131 n. 13.

**5.** The Naturalization and Bankruptcy Clauses give Congress the power to "establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4.

ruptcy process, including most importantly the discharge provisions of 11 U.S.C. § 524(a). This is precisely the result that the framers of the Constitution both foresaw and sought to preclude when they empowered Congress to enact "uniform" laws on bankruptcy. "When the states agreed to a uniform federal rule, they had to understand that they were surrendering their sovereignty over the subject of bankruptcies." 262 B.R. at 419 (quoting *Bliemeister,* 251 B.R. at 391).

By ignoring the intent of the framers of the Constitution and indulging the states in their calculated disregard of federal bankruptcy law, a class of super creditors emerges that can act with impunity against the debtor to deny him a fresh start. *See* Steven M. Richman, *More Equal Than Others: State Sovereign Immunity Under the Bankruptcy Code,* 21 Rutgers L.J. 603, 604 (1990). In a worst-case scenario, the states could, under the mantle of sovereign immunity, revert to the practice of imprisoning debtors. Although such action would likely violate the automatic stay, bankruptcy courts would be helpless to prevent it. This result cannot be what the framers of the Constitution anticipated when, at a time imprisonment of debtors was not uncommon, they gave Congress the bankruptcy power. Furthermore, "a state would be able to use its sovereign immunity, not as a means of protecting itself, but as a mechanism for gaining an unfair advantage at the expense of other creditors." Gerson, 74 Am. Bankr.L.J. at 9. This is another troublesome scenario that currently is being played out in this Court. Florida has taken money that was part of the bankruptcy estate. Were this a Chapter 7 case, Florida would effectively be seizing for itself a position above all other priority and general unsecured creditors, rendering the priority system set by Congress meaningless and thereby usurping a power expressly granted to Congress by the Constitution.

■ For the foregoing reasons, in addition to the "depletion of the treasury" rationale, this Court concluded that sovereign immunity does not apply to Florida in this case. However, the district court has instructed the Court to consider whether Congress has abrogated state sovereign immunity. The Court construes the district court's opinion as a directive to this Court to limit its consideration on remand to the determination of the constitutionality of Section 106(a) of the Bankruptcy Code.

### *Abrogation of Sovereign Immunity*

■ Congress must satisfy two requirements to abrogate state sovereign immunity: (1) make an unequivocal statement of intent to abrogate state sovereign immunity, and (2) act " 'pursuant to a valid exercise of power.' " *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)).

■ Section 106(a) of the Bankruptcy Code provides in relevant part as follows:

Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections … 362 … [and] 542 … of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment award-

ing a money recovery, but not including an award of punitive damages....

11 U.S.C.A. § 106(a) (West 1993 & Supp. 2001). This provision is unequivocal in its statement of Congress's intent to abrogate sovereign immunity; therefore, it satisfies the first part of the test. *Wilson v. South Carolina State Educ. Assistance Auth. (In re Wilson)*, 258 B.R. 303, 307 (Bankr. S.D.Ga.2001).

The second part of the test creates a more difficult obstacle. In *Seminole Tribe* the Court held that Congress could not abrogate a state's sovereign immunity via its Article I power to regulate commerce with Indian tribes. 517 U.S. at 47, 116 S.Ct. at 1119. In doing so, the Court expressly overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which had authorized congressional abrogation of state sovereign immunity through another Article I provision, the Interstate Commerce Clause. 517 U.S. at 66, 116 S.Ct. at 1128.

■ Article I also grants Congress the power to enact bankruptcy laws, and the majority of courts—including every circuit court to consider the issue—have concluded that, in enacting Section 106(a), Congress was acting pursuant to its Article I powers; therefore, Section 106(a) is unconstitutional. *Quesada v. Puerto Rico Dep't of Health (In re Arecibo Comty. Health Care, Inc.)*, 233 B.R. 625, 628 (D.P.R.1999), aff'd sub nom 270 F.3d 17 (1st Cir.2001), petition for cert. filed, April 15, 2002 (No. 01–1545); *Sacred Heart Hosp. of Norristown v. Pennsylvania Dep't of Pub. Welfare (In re Sacred Heart Hosp. of Norristown)*, 133 F.3d 237, 245 (3d Cir.1998); *Schlossberg v. Maryland, Comptroller of the Treasury (In re Creative Goldsmiths*

*of Washington, D.C., Inc.)*, 119 F.3d 1140, 1147 (4th Cir.1997); *Department of Transp. & Dev. v. PNL Asset Mgmt. Co. LLC (In the Matter of Estate of Fernandez)*, 123 F.3d 241, 246 (5th Cir.1997); *Mitchell v. Franchise Tax Bd. (In re Mitchell)*, 209 F.3d 1111, 1121 (9th Cir. 2000). Furthermore, in noting that Congress's abrogation of state sovereign immunity in the Patent Remedy Act could not be sustained by either the Commerce Clause or the Patent Clause, the Supreme Court stated, "*Seminole Tribe* makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers." *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 636, 119 S.Ct. 2199, 2205, 144 L.Ed.2d 575 (1999). This broad statement, while dicta, reinforces the argument that Congress may not validly abrogate state sovereign immunity via the Bankruptcy Clause. Nevertheless, the Supreme Court has left open one avenue for abrogation. In *Seminole Tribe*, the Court indicated that Congress could abrogate state sovereign immunity by acting pursuant to its power to enforce the Fourteenth Amendment. 517 U.S. at 59, 116 S.Ct. at 1125 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–71, 49 L.Ed.2d 614 (1976)).

The only published cases in this district to have considered the matter have concluded that Congress enacted Section 106 of the Bankruptcy Code to enforce the Privileges and Immunities Clause of the Fourteenth Amendment.[6] *Wilson*, 258 B.R. 303; *Burke v. Georgia (In re Burke)*, 203 B.R. 493 (Bankr.S.D.Ga.1996); *Headrick v. Georgia (In re Headrick)*, 203 B.R.

---

**6.** "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; ..." U.S. Const. amend 14, § 1. Congress has the

"power to enforce, by appropriate legislation, the provisions" of the 14th Amendment. *Id.* § 5.

805 (Bankr.S.D.Ga.1996).[7] In *Wilson,* Chief Judge Dalis explained that "Congress and only Congress is empowered under Article I of the Constitution to grant to debtors the privileges and immunities of bankruptcy protection, and the Fourteenth Amendment gives Congress the power to enforce those privileges and immunities by creating private rights of action against the states." *Id.* at 307.

Any legislation purporting to enforce the Fourteenth Amendment must be remedial, rather than substantive in nature. *City of Boerne v. Flores,* 521 U.S. 507, 520, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997). In addition, "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* "The appropriateness of remedial measures must be considered in light of the evil presented." *Id.* at 530, 117 S.Ct. at 2169. In the context of abrogating state sovereign immunity, Congress must "identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." *Florida Prepaid,* 527 U.S. at 639, 119 S.Ct. at 2207; *see also Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 81–82, 120 S.Ct. 631, 644–45, 145 L.Ed.2d 522 (2000).

For identification of the states' offending conduct, the court in *Wilson* pointed to a hearing held by a congressional subcommittee considering an amendment to Section 106. 258 B.R. at 308–09. In a written statement, the National Bankruptcy Conference said that one problem under former Section 106 was the "total disdain of the automatic stay by . . . governmental units that can seize property and resist turnover without fear of judicial reprisal." *Bankruptcy Reform Hearing Before the Subcommittee on Economic and Commercial Law of the Committee on the Judiciary,* 103d Cong. 38 (1994) (Detailed Statement of Position of the National Bankruptcy Conference), *reprinted in* A & P Bankr.94 Hearings (8). The NBC also included a substantial list of cases in which the federal government escaped the mandates of the bankruptcy system by invoking sovereign immunity. *Id.* 122–29. However, nothing in the legislative history of Section 106 identifies a pattern of infringement by the states.[8] As a result, Section 106(a) does not satisfy the test for being legislation passed pursuant to Congress's power to enforce the Fourteenth Amendment.

The Court now faces the question of whether it has the power to rule on the constitutionality of a provision of the Bankruptcy Code. In *Marbury v. Madison,* the Supreme Court propounded a principle "supposed to be essential to all written constitutions, that a law repugnant

**7.** *Burke* and *Headrick* were consolidated on appeal. In an unpublished opinion, the district court affirmed on the ground that Congress enacted Section 106 to enforce the Privileges and Immunities Clause of the 14th Amendment. *Georgia v. Burke (In re Burke),* No. 92–11482, 1997 WL 33125720, at *3 (S.D.Ga. July 23, 1997). The Eleventh Circuit Court of Appeals affirmed because the State of Georgia had waived sovereign immunity by filing a proof of claim; as a result, the court did not reach the issue of whether or not Section 106 is an effective abrogation of state sovereign immunity. *Georgia Dep't of Reve-*

*nue v. Burke (In re Burke),* 146 F.3d 1313, 1317 (11th Cir.1998).

**8.** The data for providing such an identification is available to Congress. Judge Haines, who decided the *Bliemeister* case, noted that when just considering discharge issues raised in published opinions, 40 states have together made more than 100 assertions of sovereign immunity during a 7 year window. Hon. Randolph J. Haines, *Getting to Abrogation,* 75 Am. Bankr.L.J. 447, 468–69 (2001).

to the constitution is void, and that courts, as well as other departments, are bound by that instrument." 5 U.S. (1 Cranch) 137, 180, 2 L.Ed. 60 (1803). When a law and the Constitution are in conflict, "the court must determine which of these conflicting rules governs the case. This is the very essence of judicial duty.... [T]he constitution, and not such ordinary act [of the legislature], must govern the case to which they both apply." *Id.* at 178, 2 L.Ed. 60. However, at least one court has determined that the "judicial duty" discussed in *Marbury* applies only to Article III courts. *Headrick*, 203 B.R. at 808 (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58–59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982)). Another court, also relying on *Northern Pipeline*, reached a different conclusion. *Edward Pirsig Farms, Inc. v. John Deere Co. (In the Matter of Edward Pirsig Farms, Inc.)*, 47 B.R. 376, 378 n. 4 (D.Minn.1984) ("Deere's contention that bankruptcy courts are without jurisdiction to determine the constitutionality of its [sic] own acts and provisions of the bankruptcy court [sic] does not find support in the majority's decision in [*Northern Pipeline*].").

In *Northern Pipeline*, a plurality of the Supreme Court held unconstitutional a jurisdictional scheme that vested bankruptcy courts with the power to hear claims arising under state law. 458 U.S. at 87, 102 S.Ct. at 2880 (Brennan, J.); *Id.* at 91–92, 102 S.Ct. at 2882 (Rehnquist, J., concurring). The Court said, "The judicial power of the United States must be exercised by courts having the attributes prescribed in Art. III," those attributes being life tenure and undiminished compensation. *Id.* at 59, 102 S.Ct. at 2865 (Brennan, J.); U.S. Const. art. III, § 1.[9] This statement alone would seem to prohibit bankruptcy courts, which are non-Article III courts, from engaging in judicial review. However, it was made as part of a discussion of the importance of separation of powers and independence of the judiciary. The Court later noted that adjuncts to the district court are not without power.

> Congress' power to create adjuncts [to Article III courts] and assign them limited adjudicatory functions is in no sense an "exception" to Art. III. Rather, such an assignment is consistent with Art. III, so long as "the essential attributes of the judicial power" are retained in the Art. III court, and so long as Congress' adjustment of the traditional manner of adjudication can be sufficiently linked to its legislative power to define substantive rights.

*Id.* at 77 n. 29, 102 S.Ct. at 2874 n. 29 (quoting *Crowell v. Benson*, 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932)). The Court further noted that it had "sustained the use of adjunct factfinders" in the adjudication of "congressionally created rights" and "constitutional rights—so long as those adjuncts were subject to sufficient control by an Art. III district court." *Id.* at 78–79, 102 S.Ct. at 2875.

More recently, in considering whether Article I courts are "Courts of Law" within the meaning of the term in the Appointments Clause,[10] the Supreme Court said it

---

**9.** Article III provides as follows:

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. Const. art. III, § 1.

**10.** "[T]he Congress may by Law vest the Appointment of ... inferior Officers, as they

"rejected arguments ... that only Article III courts could exercise the judicial power because the term 'judicial Power' appears only in Article III." *Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 889, 111 S.Ct. 2631, 2644, 115 L.Ed.2d 764 (1991). In fact, its previous "cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States." *Id.*

Taken together, these cases indicate that Article I courts set up as adjuncts to Article III courts can wield judicial power so long as doing so does not violate separation of powers or encroach on the independence of the judiciary. Bankruptcy courts are units of the district court, which are vested with jurisdiction over bankruptcy cases. 28 U.S.C. §§ 151, 1334.[11] The district court refers bankruptcy cases to the bankruptcy court, but may withdraw the reference for cause. *Id.* §§ 157(a), (d).[12] Therefore, even though bankruptcy judges do not possess the attributes of Article III judges, sufficient control is exerted by Article III courts to ensure that bankruptcy courts are not beholden to either the executive or legislative branches, thus maintaining the separation of powers and judicial independence. As a result, the Court concludes that, within the sphere of its jurisdiction to hear core bankruptcy matters, it exercises judicial power and is bound by the mandate imposed by *Marbury* to reject legislation that conflicts with the Constitution. Having determined that it has the requisite power to do so, the Court holds that Section 106(a) is unconstitutional as applied to the states.

### Other Issues

Also raised on appeal by Florida were the questions of whether the Court could award punitive damages and whether Florida was provided for in Debtors' plan even though it had not received notice of the bankruptcy. Having determined that Florida retains its sovereign immunity because Congress failed to abrogate it, the Court cannot award any damages, punitive or otherwise, against Florida. The question of whether Florida was provided for under the plan is irrelevant to Debtor's

---

think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

**11.** Section 151 provides as follows:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

28 U.S.C.A. § 151 (West 1993).

Section 1334 provides in relevant part as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. §§ 1334(a), (b) (West 1993).

**12.** Section 157 provides in relevant part as follows:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

. . .

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

28 U.S.C.A. §§ 157(a), (d) (West 1993).

complaint. It does not affect the issues of whether Florida violated the automatic stay or whether King is entitled to turnover. Any reference to it in the Court's earlier opinion was merely incidental to the findings of fact that Florida is an unsecured creditor and that Debtors' plan provides for all unsecured creditors. It is unnecessary to decide that question as a matter of law.

Because Florida is protected by sovereign immunity and has taken no action to waive that immunity or otherwise consent to this suit, King's complaint for turnover and contempt is dismissed.

An Order in accordance with this Opinion will be entered on this date.